# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER B. THOMPSON,
    Petitioner,

    v.                                                Case No. 09C0860

LARRY JENKINS,
    Respondent.

## DECISION AND ORDER

Petitioner Christopher B. Thompson, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A jury convicted petitioner of substantial battery domestic violence, second degree sexual assault domestic violence and stalking-domestic abuse. He was sentenced to ten years imprisonment and ten years extended supervision, consecutive to five years probation. Petitioner appealed his conviction, claiming a denial of effective assistance of counsel because his attorney failed to request a proper curative in response to the complaining witness's in-court statement "Why is [the petitioner] looking at me?" The court of appeals denied his appeal and the state supreme court denied review.

## I. BACKGROUND

The court of appeals summarized the facts of the case and its resolution of the issue as follows:

> Thompson had a relationship with Katrina Wilcox between 2003 and 2005, and lived with her and her children for a period of time starting in December 2004. Thompson was charged and found guilty of substantial battery, as domestic abuse, for head butting Wilcox and breaking her nose on June 12, 2003. Thompson was charged and found guilty of

second-degree sexual assault when he forced Wilcox into a closet on March 5, 2005, and forcibly had nonconsensual intercourse with her. Thompson was also charged and found guilty of stalking for repeatedly phoning and showing up at Wilcox's residence at the termination of their relationship between March 25 and April 5, 2005.

Wilcox characterized the relationship as on again, off again. She indicated that on several occasions she tried to break up with Thompson and that she tried to move without him knowing where she was moving to. Thompson always found her and told her he would always be around. She described the fights they had and her efforts to shield her children from Thompson's angry conduct. At times she would engage in certain conduct to appease Thompson and to avoid conflict because she was afraid of him. It was Thompson's theory of defense that Wilcox sought to frame him for the crimes because she found out that he had a new girlfriend.

. . . .

At one point during her direct examination, Wilcox was identifying cigarette butts found at her residence as Thompson's and blurted out, "Why is he looking at me?" A recess was taken and Thompson asked for a mistrial on the ground that he was prejudiced by Wilcox "playing up to the jury." The trial court denied the motion for a mistrial and instructed the jury to disregard that part of Wilcox's answer that was nonresponsive to the question before her. Thompson argues that trial counsel was ineffective for not objecting to the curative instruction the trial court gave because it did not inform the jury that Thompson had a constitutional right to confront and look at his accuser and it did not permit the jury to assess the accuracy of Wilcox's accusation in evaluating her credibility.

. . . .

Thompson's second claim of ineffective assistance of counsel is that counsel should have requested that the jury be instructed that Thompson had the right to look Wilcox in the eye while she was testifying so that it would not draw a negative inference from her accusation that he was looking at her. The constitutional right to confrontation includes the right to see a witness during testimony. Coy v. Iowa, 487 U.S. 1012, 1017-18, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988). Yet the primary purpose of the right to "face to face" confrontation is meaningful cross-examination to "assist the accuracy of the truth-determining process in criminal trials by assuring that the trier of fact has a satisfactory basis for evaluating the truthfulness of admitted evidence." State v. Nelson, 138 Wis. 2d 418, 437, 406 N.W.2d 385 (1987). See also Virgil v. State, 84 Wis. 2d 166, 186, 267 N.W.2d 852 (1978) ("the cornerstone of the right of confrontation is not merely that the state has

2

produced a witness for eyeball-to-eyeball presentment to the defendant, but rather that the right of confrontation is satisfied in a constitutional sense only where a meaningful cross-examination of the witness who actually uttered the assertions is possible"). Thompson does not cite any legal precedent that it includes the right to look the witness in the eye or that the jury should be so instructed. See Gaertner v. State, 35 Wis. 2d 159, 166, 150 N.W.2d 370 (1966) (the right of confrontation is "not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination"). The right of confrontation is not absolute and it permits exceptions when necessary to further important public policy or otherwise protect a witness. See Maryland v. Craig, 497 U.S. 836, 853, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990); Coy, 487 U.S. at 1021; State v. Thomas, 150 Wis. 2d 374, 380, 442 N.W.2d 10 (1989). Surely a defendant does not have a constitutional right to stare down or otherwise subtly intimidate the witness. There is no basis for instructing the jury that the defendant has a right to look at the witness.

Trial counsel testified that he did not request a different instruction because he thought the instruction the trial court gave was appropriate--Wilcox's accusation that Thompson was looking at her was unresponsive to the question. Thompson claimed he was prejudiced by that accusation. The instruction to disregard the outburst had the purpose of preventing any negative inference from her outburst. Counsel was not ineffective for not objecting to an instruction which addressed his claim of prejudice. See State v. Williamson, 84 Wis. 2d 370, 391, 267 N.W.2d 337 (1978) (prejudice to a defendant is presumptively erased when admonitory instructions are properly given by a trial court).

Thompson argues that the instruction went too far and precluded the jury from considering Wilcox's false accusation in assessing her credibility. He asserts that trial counsel was ineffective for not requesting an instruction that would have permitted him to argue that Wilcox made a false statement in the presence of the jury. We acknowledge that witness credibility may be affected by a wide variety of behaviors that the jury observes while the witness is testifying. See State v. Owens, 148 Wis. 2d 922, 929, 436 N.W.2d 869 (1989) (the finder of fact sees the demeanor of the witness and the body language and hears the emphasis, volume alterations and intonations of the testimony). For example, a witness who avoids the gaze of the defendant may be exhibiting fear, embarrassment, shyness, nervousness, indifference, or evasiveness. Wilcox's accusation that Thompson was looking at her, whether true or false, is also subject to varying interpretations on how it impacts her credibility. It could exhibit fear, intimidation, and anger, a desire to assert power over Thompson, or even confidence since it begs the question of why Wilcox was looking at Thompson. Even assuming that Wilcox falsely accused Thompson of looking at her, it was but one aspect of

3

the vast array of testimonial indicators that the jury observed during Wilcox's testimony. The instruction to disregard Wilcox's accusation only minimally impaired the jury's opportunity to assess her credibility. See Morales v. Artuz, 281 F.3d 55, 60-62 (2nd Cir. 2002) (permitting witness to wear dark sunglasses did not violate the defendant's right of confrontation because the jurors' inability to observe the witness's eyes was only a minimal impairment of the opportunity to assess credibility in light of all other traditional bases for evaluating testimony). Thompson was not prejudiced by the instruction given since it had such a slight effect and its relationship to credibility was de minimus. State v. Dyess, 124 Wis. 2d 525, 542, 370 N.W.2d 222 (1985).

We conclude that Thompson was not denied the effective assistance of trial counsel. Counsel's performance was neither deficient nor prejudicial. Thompson is not entitled to a new trial.

State v. Thompson, No. 2007AP2913-CR, 2008 Wisc. App. LEXIS 931, at *2-11 (Wis. Ct. App. 2008, Nov. 26, 2008) (footnotes omitted).

## II.  DISCUSSION

Petitioner's ineffective assistance of counsel claim is controlled by the clearly established standard set out in Strickland v. Washington, 466 U.S. 668 (1984).  To show that his counsel's assistance fell below Sixth Amendment standards, petitioner must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness and (2) his counsel's errors so prejudiced his defense that it deprived him of a fair trial. Strickland, 466 U.S. at 687-88.  The reasonableness of counsel's performance is evaluated in light of all the circumstances, and to determine the existence of prejudice, the court examines the totality of the evidence before the jury. See Peoples v. United States, 403 F.3d 844, 848 (7th Cir. 2005).  To show prejudice, petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

4

I may grant petitioner's application only if the decision of the court of appeals was "contrary to or involved an unreasonable application of clearly established" Supreme Court precedent, § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented," § 2254(d)(2). Thus petitioner must do more than show that he would have satisfied Strickland's test if his claim was being analyzed in the first instance; he must show that the court of appeals applied Strickland to the facts of his case in an objectively unreasonable manner. Bell v. Cone, 535 U.S. 685, 698-99 (2002). Petitioner's burden is high. A state court's decision is unreasonable within the meaning of § 2254(d)(1) only if it is "so erroneous as to be objectively unreasonable" and "well outside the boundaries of permissible differences of opinion." Emerson v. Shaw, 575 F.3d 680, 684 (7th Cir. 2009). Because the Strickland standard is a deferential test presuming the reasonableness of counsel's decisions, only a clear error in applying it will support a writ of habeas corpus. Id. at 685; Holman v. Gilmore, 126 F.3d 876, 882 (7th Cir. 1997).

The court of appeals reasonably concluded that counsel's performance was neither deficient nor prejudicial. Petitioner claims that his counsel provided ineffective assistance by failing to request a curative instruction informing the jury of his Sixth Amendment right to confront his accuser by looking at her while she testified. The Confrontation Clause provides petitioner, as an accused, with both the right to physically face the witnesses against him and the right of cross-examination. Coy, 487 U.S. at 1021. However, petitioner's argument fails because counsel was not ineffective by not seeking a strategically useless curative instruction. The trial court had already instructed the jury to disregard Wilcox's statement, thereby presumptively erasing any negative inference arising from her outburst. See generally, Richardson v. Marsh, 481 U.S. 200, 206-7 (1987) (juries

5

are presumed to follow their instructions). Thus, the court of appeals' conclusion that counsel's performance was not deficient is not well outside the boundaries of permissible differences of opinion. Furthermore, petitioner has not shown that prejudice resulted from his counsel's alleged error. The jury found that he sexually assaulted, battered, and stalked Wilcox. Petitioner has not come close to demonstrating a reasonable probability that the result of his trial would have been different had the jury been instructed that he had the right to look at her as she testified.

Petitioner also claims that his counsel's failure to object to the curative instruction was deficient because the given instruction precluded the jury from considering Wilcox's allegedly false accusation in assessing her credibility. Petitioner did not raise this ground in his petition nor set forth facts supporting it as required by Rule 2(c) of the Rules Governing § 2254 cases. See Mayle v. Felix, 545 U.S. 644, 650 (2005). Thus petitioner is not entitled to raise this argument. Were I to consider this ground, petitioner would not be entitled to relief on it. The court of appeals reasonably concluded that no prejudice resulted from the instruction.

### III. CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, I must decide whether to issue or deny a certificate of appealability (hereinafter "COA") when entering a final order adverse to the petitioner. A COA is necessary before a habeas petitioner may take an appeal to the Seventh Circuit. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). The COA may issue only if petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree

6

that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

Although the rule allows the court to ask the parties to submit argument on whether a COA should issue, it is not necessary in this case. For the reasons stated above, I deny a COA because petitioner has not made a substantial showing of a denial of a constitutional right. I do not believe jurists of reason would differ as to any of the issues petitioner presented in this case and I do not believe these issues should proceed further. See Id. at 484-5.

Therefore for the reasons stated,

**IT IS ORDERED** that petitioner's application for a writ of habeas corpus is **DENIED** and this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

Dated at Milwaukee, Wisconsin this 16 day of July, 2010.

/s_____
LYNN ADELMAN
District Judge

7

Case 2:09-cv-00860-LA   Filed 07/16/10   Page 7 of 7   Document 9